Paul Edward **WYBORNY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–05–00158–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 22, 2006.

Rehearing Overruled Jan. 18, 2007.

Nicole Deborde, Houston, TX, for Appellant.

Kelly Ann Smith, Houston, TX, for State.

Panel consists of Justices NUCHIA, KEYES, and HANKS.

## OPINION

GEORGE C. HANKS, JR., Justice.

A jury found appellant, Paul Edward Wyborny, guilty of the murder of Patrick Axtell and assessed punishment at 40 years' confinement. In two points of error, appellant contends that the trial court erred in overruling his objection to the prosecutor commenting on his post-arrest silence in violation of article I, section 10 of the Texas Constitution and violated his right to remain silent under the Fifth Amendment to the United States Constitution. We reverse and remand.

### Background

On June 24, 2004, appellant and his girlfriend, Sabrina, went to a bar in Harris County, Texas called "Uncle Albert's." While playing a game of pool, the two came into contact with Rene Rodriguez. All three were served alcohol by Jennifer Bissell. Appellant, Rodriguez, and Bissell testified that a dispute arose between appellant and Patrick Axtell, another patron in the bar. They testified that appellant struck Axtell with his hand. The witnesses disagreed, however, whether Axtell initiated the fight at the bar, how many times appellant struck Axtell, and whether appellant was acting in self-defense when he struck Axtell.

Appellant testified that he was playing pool when he accidentally bumped Axtell with the pool cue while Axtell was walking behind him. Axtell called him a "son of a bitch" and walked to the other side of the bar. The two men did not make any further contact with one another until appellant and Sabrina were leaving the bar for the evening.

Appellant testified that Sabrina was paying their bill when he started to walk toward the door. As appellant approached him, Axtell "flipped off" appellant. Appellant testified that he looked behind him to see if the obscene gesture was directed toward someone else. He turned back around, and Axtell said "I'll break your face" and "took a swing" at appellant's nose. Appellant testified that Axtell then said "I've got something for you" and was reaching into his back pocket when appellant hit him in the face, knocking him to the floor. Appellant, thinking that Axtell had "a knife or small pistol or something," straddled Axtell with one knee on his arm that was reaching in the pocket and his other knee on Axtell's chest. Appellant testified that Axtell then hit him in the ribs. Appellant responded with three quick hits to Axtell's face. Appellant said that he "decided [that it] wasn't a good place to be on top of him because [he] was still vulnerable if [Axtell] had a weapon," so he got off of Axtell and grabbed a nearby pool cue "for [his] defense only." Appellant was told to leave the bar. He learned the next day that Axtell later died from his injuries.

The State called two eyewitnesses to the stand at trial, Rene Rodriguez and the bartender, Jennifer Bissell. Both Rodriguez and Bissell corroborated much of appellant's testimony. However, neither tes-

tified that they saw Axtell strike appellant first. Bissell testified to seeing appellant strike Axtell twice before he fell to the ground. Both witnesses agreed that appellant struck Axtell at least three times after he hit the floor.

After the fight, Rodriguez and Bissell told appellant to leave the bar. Later that evening, an acquaintance of appellant was called to help with a physical struggle between appellant and Sabrina at their home. The acquaintance called 911 to report the incident. The police responded, but appellant left the home before they arrived. At the request of the officers who responded to the 911 call, Sabrina returned to Uncle Albert's and informed the police of appellant's identity. The following morning, the investigating detectives went to breakfast at the International House of Pancakes. While there, they coincidentally saw appellant and Sabrina eating breakfast, and they arrested him at the restaurant.

At trial, appellant took the stand to testify in his own defense. On direct examination, he explained that he acted in self-defense when he struck Axtell. On cross-examination by the State, the prosecutor questioned appellant regarding his post-arrest silence in an attempt to impeach his claim of self-defense.

### Cross–Examination Regarding Post–Arrest Silence

In two points of error, appellant contends that the trial court erred in overruling his objection to the prosecutor's comments regarding his post-arrest silence in violation of Article I, section 10 of the Texas Constitution and the Fifth Amendment to the United States Constitution.

Appellant complains of the following cross-examination by the State's attorney:

Q: When you got there to the IHOP, was Sabrina there?

A: Yes, ma'am.

Q: While you were there, did you come in contact with the police?

A: Yes, ma'am, I did.

Q: Did the police take you into custody?

A: Yes, they did.

Q: At that time when the police took you into custody, did you tell them, Hey, guys, I was acting in self-defense?

A: (Shakes head negatively.)

[DEFENSE COUNSEL]: Objection.

THE COURT: Please answer yes or no.

[DEFENSE COUNSEL]: Objection. He's got a right not to respond.

THE COURT: Overruled.[1]

Q: When the police initially came up to you as you were there and they are taking you into custody, did you say anything to them about, Hey, guys, this is just a misunderstanding; I acted in self-defense? Yes or no?

A: No, ma'am.

### Preservation

■ Texas Rule of Appellate Procedure 33.1(a)(1)(A) provides, in relevant part, that for a complaint to be presented on appeal, a timely request, objection, or motion must have been made to the trial court, which "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specific-

---

1. Although the reporter's record reflected appellant's counsel's objection as: "Objection. He's got a right to respond," the record before us was properly supplemented. The ex-change was amended to read: "Objection. He's got a right **not** to respond." (Emphasis added.)

ity to make the trial court aware of the complaint, *unless the specific grounds were apparent from the context.*" TEX. R.APP. P. 33.1(a)(1)(A) (emphasis added). Texas Rule of Evidence 103(a)(1) contains similar guidelines, providing that "a timely objection or motion to strike [must appear] on the record, stating the specific ground of objection, *if the specific ground was not apparent from the context.*" TEX.R. EVID. 103(a)(1) (emphasis added). Additionally, it is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial. *See Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex.Crim. App.2004) (holding that objection that "Fifth Amendment rights were violated" was not sufficient to preserve complaint on appeal that rights to post-arrest silence under Texas Constitution had been violated). In evaluating whether an imprecise objection is sufficient to preserve error, "one must look to the context of each case in order to see if the ground of the objection was apparent." *Id.* at 538.

■ Here, the State concedes that its cross-examination "clearly implicated" appellant's post-arrest statements, but it relies on *Heidelberg* to support its argument that appellant's objections at trial were not sufficient to preserve error. We disagree.

■ Article I, section 10 of the Texas Constitution protects a defendant's post-arrest silence even before his *Miranda*[2] warnings have been administered. *Id.* at

537, 86 S.Ct. 1602. In contrast, the Fifth Amendment of the Federal Constitution protects post-arrest silence made only after a defendant's *Miranda* warnings have been given. *Id.* Thus, a defendant receives more protections under the Texas Constitution than under the Federal Constitution.

In *Heidelberg,* the Court of Criminal Appeals determined that Heidelberg's objections that referred to the "Fifth Amendment" were insufficient to preserve error under the Texas Constitution. *See id.* The court explained that the objections by Heidelberg specifically referred to Heidelberg's right to remain silent under the "Fifth Amendment" only and that "there is no indication in the record that the judge understood that Appellant was trying to invoke a protection different from the Fifth Amendment protection which he was citing." *Id.* at 538. Further, the *Heidelberg* court noted that "many of the questions asked to Appellant in the case at hand were not time-specific, i.e. one could not tell from the State's questions whether the State was asking about pre-arrest silence, post-arrest pre-*Miranda* silence, or post-arrest post-*Miranda* silence." *Id.* at 539. The State's questions and comments about Heidelberg's silence were not time specific because they included a period of time when Heidelberg was not in custody or under arrest, and a period of time after Heidelberg was arrested. *Id.* at 536–37.[3]

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Specifically, *Heidelberg* complained about the "State's cross-examination at trial, when it began questioning appellant about his willingness to speak to the investigator and whether he knew that the investigator was trying to contact him about the allegations." *Id.* at 536. The State asked Heidelberg about a period of time before Heidelberg was arrested by inquiring, "Mr. Heidelberg, you certainly knew that Detective Fitzgerald was trying

to get a hold of you [to] talk to you, didn't you?" *Id.* The State questioned the detective about a period of time after Heidelberg was arrested by asking, "Once the defendant was placed under arrest, had he wanted to talk to you, would you have sat down and spoken with him?" *Id.* The State also argued in its closing statement, as follows: "Do you really believe he wanted to wait five months from the date of arrest, he saved all that information to come and tell you? Of course not, that's garbage." *Id.* at 536–37.

The Court of Criminal Appeals held that Heidelberg's objection to the admission of evidence was insufficient to preserve error "[d]ue to: 1) the lack of time-specific questions by the prosecutor, 2) counsel's failure to cite to the state constitution or even specify that he was objecting to post-arrest silence, and 3) the lack of commentary by the judge in making his rulings on the objections." *Id.* at 542–43.

In *Cleveland v. State*, we cited to *Heidelberg*, and held that the objection on the grounds that the defendant has a "right to remain silent" was insufficient to preserve error because Cleveland failed to specifically refer to the Texas Constitution or the *Sanchez*[4] case. 177 S.W.3d 374, 384 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd). Cleveland complained of the State's closing argument that asserted that he talked to his mother, sister, employer, 911 operator, and police officers about the stabbing and never mentioned to any of them his claim of self-defense. *Id.* at 383. We noted in *Cleveland* that, "Appellant acknowledged that, *before peace officers responded to the stabbing at his house,* he spoke on the telephone to family members, his employer, and to the 911 operator, whom he told that he had stabbed his wife, but without mentioning self-defense." *Id.* at 379 (emphasis added). The facts in *Cleveland* further showed that, when the first deputy arrived at the scene of the murder, Cleveland approached that deputy and told him that he stabbed the victim. *Id.* at 378–79. That deputy arrested Cleveland and did not obtain any other statements from him. *Id.* at 379. A second deputy read Cleveland his rights shortly after Cleveland was arrested. *Id.* The State's comments about Cleveland's silence, therefore, concerned his silence before his arrest, his silence after his arrest but before *Miranda* rights were read, and his silence after his arrest

and after his *Miranda* rights were read. *See id.* Thus, like *Heidelberg,* it was not apparent from the context of the circumstances and the objection that Cleveland's objection that he has a "right to remain silent" was a complaint under the Texas Constitution, because the State's comment concerned Cleveland's pre-arrest silence, post-arrest pre-*Miranda* silence, and post-arrest post-*Miranda* silence. *See Heidelberg,* 144 S.W.3d at 539. Also like *Heidelberg,* Cleveland did not cite to the state constitution or even specify that he was objecting to post-arrest silence. *Cleveland,* 177 S.W.3d at 384. We concluded in *Cleveland* that "the specific grounds of appellant's complaint were not apparent from the context." *Id.* In *Cleveland,* we held that the record was insufficient to show that "the trial court was aware of the complaint" based only on the general objection that he had a "right to remain silent." *Id.*

Here, appellant's imprecise objection that he had a "right not to respond" can be sufficient to preserve error depending on whether the ground for the objection is apparent based on the context of the case. *See Heidelberg,* 144 S.W.3d at 538. In this case, unlike in *Heidelberg* and in *Cleveland,* the State's questions specifically referenced only one period of time—when appellant was in police custody and before *Miranda* rights were read to him. The context of the questions, therefore, could only implicate appellant's post-arrest, pre-*Miranda* right to remain silent, which is protected by the Texas Constitution only. *See id.* at 537. Thus, despite the failure of the objection to specifically reference the Texas Constitution, given the context of the State's question, the objection was specific enough to have put the trial court on notice of his objection. *See id.*

4. *Sanchez v. State,* 707 S.W.2d 575 (Tex.Crim. App.1986).

This case is analogous to *Samuel v. State*, 688 S.W.2d 492 (Tex.Crim.App. 1985). In *Samuel*, the defendant was found guilty of forgery. *Id.* at 493. On direct examination by the State, the prosecutor asked the store clerk whether the defendant ever professed his innocence during a 20–minute time period in which the store owner was holding him until the police arrived.[5] *Id.* at 494. The defense attorney objected "to statements made after he was under arrest," and the trial court overruled the objection. *Id.* at 494. Later, in jury argument, the prosecutor made the following comments:

> What is the defendant's statement when he's caught [by the store clerk]? "It's only a check." His words.... And [the store clerk] told you that for the twenty minutes he held this defendant until the police arrived that this defendant did not utter one syllable protesting his innocence.... In fact, his silence there at the scene is one of the most damaging bits of evidence you have before you.

*Id.* The defense attorney again objected to the prosecutor's "comment on the defendant's right to remain silent and his comment on his failure to make a statement at the scene." *Id.* On appeal, the State claimed that the defendant's objection at trial only preserved error under federal constitutional grounds, under which there would be no protection for post-arrest, pre-*Miranda* silence, not state constitutional grounds. *Id.* at 495. The Court of Criminal Appeals reasoned that, "where the correct ground of exclusion was obvious to the judge and opposing counsel, no waiver results from a general and imprecise objection," and that, even though the objection was somewhat of a "catchall," it was clear enough to put the court on notice

as to the nature of the defendant's objection. *Id.* at 495–96.

Here, as in *Samuel*, we hold that appellant's objection was clear enough to put the court on notice as to the nature of his objection, and therefore, to preserve error on appeal.

### Error

We hold that it was error for the trial court to overrule appellant's objection under the Texas Constitution.

### Texas Constitution

■■■ In Texas, post-arrest, pre-*Miranda* silence may not be used against an accused at trial. *See Heidelberg*, 144 S.W.3d at 537. The use of post-arrest silence has been held to violate an accused's right to be free from self-incrimination under article I, section 10 of the Texas Constitution. *Sanchez*, 707 S.W.2d at 582. As a general rule, when an accused voluntarily takes the stand before a jury, he is subject to the same rules as any other witness in that he may be impeached, contradicted, and cross-examined as to new matters. *Feldman v. State*, 71 S.W.3d 738, 755 (Tex.Crim.App.2002). Where there are overriding constitutional or statutory prohibitions, however, the accused may not be treated as just another witness. *Alexander v. State*, 740 S.W.2d 749, 763 (Tex.Crim.App.1987). One of the limitations on the prosecution's cross-examination of an accused is the constitutional privilege against self-incrimination. *Sanchez*, 707 S.W.2d at 582. The use of a defendant's post-arrest silence is akin to a comment on his failure to testify at trial because it attempts to raise an inference of guilt arising from the invocation of a constitutional right. *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.1995).

---

**5.** The defendant had been held at shotgun point by the store clerk, which the court of appeals deemed equivalent to being held under arrest. The State did not contest that finding, and the court did not rule on the issue. *Id.* at 495 & 497 n. 2.

■ Here, the State used appellant's post-arrest silence against him to discredit and impeach him on cross-examination by demonstrating to the jury that he did not express his defensive theory of self-defense after his arrest. Appellant's counsel timely objected on this basis and preserved error. TEX.R.APP. P. 33.1. We hold that it was error for the trial court to overrule appellant's objection. This error resulted in a violation of appellant's right to be free from self-incrimination under article I, section 10 of the Texas Constitution. TEX. CONST. art. I, § 10.

**United States Constitution**

Having held that it was error for the trial court to overrule appellant's objection under the Texas Constitution, we need not determine whether it was error under the United State's Constitution, as well.

**Harm Analysis**

■ We must now determine whether the trial court's error in overruling appellant's objection to the State's cross-examination on his post-arrest silence constituted harmful error.

Because appellant's objection concerned his right to remain silent under article I section 10 of the Texas Constitution, Texas Rule of Appellate Procedure 44.2(a) applies. Texas Rule of Appellate Procedure 44.2(a) requires reversal in constitutional error cases "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a). In examining the record to assess harm, we consider: (1) the source and nature of the error, (2) the extent to which the State emphasized it, (3) the weight a juror would probably place on it, and (4) whether declaring the error harmless would encourage the State to repeat it with impunity. *See Dinkins,* 894 S.W.2d at 356.

In this case, the State was the source of the error, and it conceded that its cross-examination "clearly implicated" appellant's post-arrest silence. The State asked the same question twice: once before appellant's counsel objected and again after the objection was overruled. There was no other mention of appellant's post-arrest silence, so this evidence was not strongly emphasized by the State. However, the trial court overruled appellant's objection and did not instruct the jury to disregard the State's comment. This could have left the jury with the impression that, if appellant attacked Axtell out of fear for his life, he would have said something to the officers at the time of arrest. *See Bhakta v. State,* 981 S.W.2d 293, 296 (Tex.App.-San Antonio 1998, pet. ref'd) (by overruling objection, State's comment left jury with impression that it was acceptable to draw inference of guilt from appellant's silence).

It is difficult to determine what weight a juror would place on an error like the one in this case. The State argues that there is no possibility that the error impacted the jury's verdict given the overwhelming evidence of appellant's guilt. However, in a case like this where there are inconsistencies in the testimony of the two eyewitnesses and the appellant, credibility was a crucial issue for the jury. Further, self-defense was the only defensive theory appellant presented.

The sole contested issue at trial was appellant's intent. Appellant testified that he was playing pool when he accidentally bumped Axtell with the pool cue while Axtell was walking behind him. Axtell called him a "son of a bitch" and walked to the other side of the bar. The two men did not make any further contact with one another until appellant and Sabrina were leaving the bar for the evening.

Appellant testified that Sabrina was paying their bill when appellant started to

walk toward the door. As appellant approached him, Axtell "flipped off" appellant. Appellant testified that he looked behind him to see if the obscene gesture was directed toward someone else. He turned back around, and Axtell said "I'll break your face" and "took a swing" at appellant's nose. Appellant testified that Axtell then said "I've got something for you" and was reaching into his back pocket when appellant hit him in the face, knocking him to the floor. Appellant, thinking that Axtell had "a knife or small pistol or something," straddled Axtell with one knee on his arm that was reaching in the pocket and his other knee on Axtell's chest. Appellant testified that Axtell then hit him in the ribs. Appellant responded with three quick hits to Axtell's face. The situation "wasn't under control." Appellant "was still getting hit at the time." Appellant said that he "decided [that it] wasn't a good place to be on top of him because [he] was still vulnerable if [Axtell] had a weapon," so he got off of Axtell and grabbed a nearby pool cue "for [his] defense only." Appellant explained that it was not his intent to kill or even cause serious bodily injury to Axtell. His intent was to stop Axtell from "injuring me."

Rodriguez confirmed that appellant struck Axtell once while both men were still standing and three more times after Axtell hit the floor. At this point, Rodriguez noticed that Axtell "was out" and "seemed defenseless," so he intervened and pushed appellant off of Axtell. He testified that, as he was pushing him back, appellant grabbed the pool cue but confirmed that appellant did not strike Axtell with it. Rodriguez testified that appellant appeared ready to hit Axtell with the pool cue and probably would have if he had not stepped in. He testified that he did not see Axtell make any obscene gesture or threats toward appellant but did see the two "acknowledge" each other prior to the fight. Rodriguez said that he did not see Axtell take a swing at appellant and did not see him raise his hands to defend himself against appellant's first punch. Appellant testified that Rodriguez created the whole story about pulling him off of Axtell so that Rodriguez's wife, who was not at the bar, would think he was a hero.

Bissell testified that she heard a brief verbal exchange between appellant and Axtell prior to the fight. She said that she heard appellant say "Are you fucking talking to me?" and heard Axtell respond "If I was talking to you I would be in your fucking face." Bissell testified to seeing appellant hit Axtell twice before he fell to the ground and saw appellant hit Axtell "three or four more times" after that. She further testified on cross-examination that, after Axtell hit the floor, she could not see if he was moving or not and that she saw appellant with the pool cue but did not see the pool cue connect with Axtell. Appellant testified that Bissell asked him to leave the bar after the fight. Rodriguez admitted to asking appellant and his girlfriend to leave.

It was undisputed that appellant hit Axtell with his fists and caused Axtell's death. Appellant's sole defense was that he was acting in self-defense. Which witnesses the jury believed regarding who initiated the disagreement at the bar, how many times appellant struck Axtell, and whether he was acting in self-defense depended upon the jury's resolution of the witnesses's testimony. With credibility being such a critical issue, the State's comment seeking to impeach appellant's credibility, and the suggested inference of guilt from his silence, could have been given decisive weight by the jury. To hold otherwise might encourage the State to repeat this error. *See Dinkins*, 894 S.W.2d at 356.

Given the importance of credibility in the jury's deliberations, we are unable to conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction. Accordingly, we sustain appellant's first point of error.

## Conclusion

We reverse the judgment of the trial court. The cause is remanded to the trial court for a new trial.

Justice KEYES, dissenting.

EVELYN V. KEYES, Justice, dissenting

I agree with the majority that the trial court erred in overruling appellant's objection to the prosecutor's comment on his post-arrest silence. However, I believe the comment was harmless. Therefore, I dissent. I would affirm the judgment of the trial court.

## Standard of Review of Harmful Constitutional Error

On June 24, 2004, appellant and his girlfriend, Sabrina, went to a bar in Harris County, Texas called "Uncle Albert's." While playing a game of pool, the two came into contact with Rene Rodriguez. All three were served alcohol by Jennifer Bissell. Appellant, Rodriguez, and Bissell testified that a dispute arose between appellant and Patrick Axtell, another patron in the bar. They testified that appellant struck Axtell with his hand. The witnesses disagreed, however, as to whether Axtell initiated the fight at the bar, how many times appellant struck Axtell, and whether appellant was acting in self-defense when he struck Axtell.

Appellant testified that he was playing pool when he accidentally bumped Axtell with the pool cue while Axtell was walking behind him. Axtell called him a "son of a bitch" and walked to the other side of the bar. The two men did not make any further contact with one another until appellant and Sabrina were leaving the bar for the evening.

Appellant testified that Sabrina was paying their bill when he started to walk toward the door. As appellant approached him, Axtell "flipped off" appellant. Appellant testified that he looked behind him to see if the obscene gesture was directed toward someone else. He turned back around, and Axtell said, "I'll break your face" and "took a swing" at appellant's nose.

I agree with the majority that the trial court's failure to sustain appellant's objection to the State's attempt to impeach appellant with his post-arrest silence as to his self-defense theory was constitutional error that resulted in a violation of appellant's right to remain silent under Article I, Section 10 of the Texas Constitution. See TEX. CONST. ART. I, § 10. Therefore, Texas Rule of Appellate Procedure 44.2(a) applies. Texas Rule of Appellate Procedure 44.2(a) requires reversal in constitutional error cases "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a). In examining the record to assess harm, we consider: (1) the source and nature of the error; (2) the extent to which the State emphasized it; (3) the weight a juror would probably place on it; and (4) whether declaring the error harmless would encourage the State to repeat it with impunity. *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim.App.1995). I would hold that the error was harmless under the *Dinkins* factors.

### (1) Source of the error

The source of the error was the State's single question about appellant's post-arrest silence as to his claim of self-defense

prior to appellant's counsel's objection and its single repetition of the question after the objection was overruled.

### (2) Extent to which the State emphasized the error

There was no other mention of appellant's post-arrest silence, so this evidence was not strongly emphasized by the State.

### (3) Weight a juror would probably place on appellant's post-arrest silence

In applying the harmless error rule, we are required to "calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence." *Harris v. State*, 790 S.W.2d 568, 587 (Tex.Crim.App.1989). "If overwhelming evidence dissipates the error's effect upon the jury's function in determining the facts so that it did not contribute to the verdict then the error is harmless." *Id.*

As the majority states, this case turned on the credibility of the witnesses, an issue exclusively within the province of the jury. Three witnesses, including appellant, testified to the events surrounding Axtell's death.

Appellant testified that, after words were exchanged between them, Axtell said "I've got something for you" and was reaching into his back pocket when appellant hit him in the face, knocking him to the floor. Appellant, thinking that Axtell had "a knife or small pistol or something," straddled Axtell with one knee on the arm with which Axtell was reaching into his pocket and his other knee on Axtell's chest. Appellant testified that Axtell then hit him in the ribs, and appellant responded with three quick hits to Axtell's face. Appellant said that he "decided [that it] wasn't a good place to be on top of him because [he] was still vulnerable if [Axtell] had a weapon," so he got off of Axtell and grabbed a nearby pool cue "for [his] defense only."

Rodriguez testified that appellant struck Axtell once while both men were still standing and three more times after Axtell hit the floor. Rodriguez noticed that Axtell "was out" and "seemed defenseless," so he intervened and pushed appellant off of Axtell. As he was pushing appellant back, appellant grabbed the pool cue. Rodriguez testified that appellant appeared ready to hit Axtell with the pool cue and probably would have done so if he had not stepped in. He did not see Axtell take a swing at appellant, and he did not see him raise his hands to defend himself against appellant's first punch.

Bissell testified that she heard a brief verbal exchange between appellant and Axtell prior to the fight. She saw appellant hit Axtell twice with his fists before he fell to the ground, and she saw appellant hit Axtell "three or four more times" after that. She further testified that after Axtell hit the floor she could not see him move and that she saw appellant with the pool cue.

Nobody but appellant testified that Axtell was capable of attacking appellant or even defending himself from appellant's blows from the time appellant hit him in the face and knocked him to the floor until he died. Not even appellant disputes the evidence that appellant hit Axtell in the face with his fists, dropping him to the floor, then beat him to death while he lay on the floor pinned down by appellant. Nor does appellant deny that after he felt himself sufficiently unthreatened to get off of Axtell, he grabbed a pool cue, but was restrained from using it. The only evidence that supports appellant's self-defense theory is his own testimony as to the subjective threat he perceived from Axtell. I would hold, therefore, that the jury was well within its reasonable discretion in re-

jecting appellant's self-defense theory and convicting him of murder.

Given appellant's full development of his self-defense theory at trial and the nevertheless overwhelming evidence that appellant beat a prone man to death with his fists after pinning him down on the ground, it is reasonable to infer that a jury would place only negligible weight on the State's comment on appellant's post-arrest silence in determining his guilt.

*(4) Encouragement to the State to repeat the error*

There is nothing to suggest that the State would be encouraged to repeat its reference to appellant's post-arrest silence in order to influence the jury's determination of guilt. The only possible result of the State's repetition of the error of commenting on the defendant's post-arrest silence on remand in this case, or in a similar future case, would be to provoke a second appeal and yet another potential retrial of a case in which the only evidence of self-defense is the appellant's own subjective appreciation of a threat from a person who, on the basis of overwhelming evidence, is in no position to threaten him and in which the evidence of guilt is likewise overwhelming. There is, thus, no rational incentive for the State to repeat the error.

## Conclusion

I would hold that the State's reference to appellant's post-arrest silence was harmless. I would affirm the judgment of the trial court.