**Thomasine Marie HENNESSY,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–07–00022–CR.**

Court of Appeals of Texas,
Waco.

Aug. 27, 2008.

Rehearing Overruled Sept. 16, 2008.

Discretionary Review Refused
Jan. 14, 2009.

John T. Quinn, Bryan, TX, for Appellant.

Bill R. Turner, Brazos County Dist. Atty., Bryan, TX, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

A jury found Appellant Thomasine Marie Hennessy guilty of felony driving while intoxicated (third offense) and assessed an eight-year prison sentence. In her appeal, Hennessy complains in three issues of the legal and factual sufficiency of the evidence and the denial of her suppression motion concerning the admissibility of her pre-arrest silence. We will affirm.

### Sufficiency of the Evidence

Hennessy's first and second issues challenge the legal and factual sufficiency of the evidence supporting her DWI conviction. When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State,* 828 S.W.2d 418, 422 (Tex.Crim.App.1992). In doing so, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App. 2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict

clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim.App.2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L.Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and to disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416–17.

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. Tex. Pen.Code Ann. § 49.04 (Vernon 2003). "Intoxicated" means not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body. *Id.* § 49.01(2)(a).

College Station police officer Joseph Benningfield testified that on the evening in question, around 11:20 p.m., he observed Hennessy hit and drive up on and over the curb for ten to fifteen yards before pulling back onto the street, and as he followed her, she drove on the yellow lane dividing line with her two left tires and made a wide right turn. He stopped her and, while initially questioning her, observed a minor alcohol odor on her breath and "bloodshot, very glassy" eyes. She told him that she had had a couple of beers to drink but would not answer further questions about her drinking or where she had been.

The officer asked her to get out of her car to do field sobriety tests, and Hennessy told him to "just take [her] in." But she got out and as she stepped over to the front of the patrol car, as requested, she oddly shuffled sideways while looking at Benningfield. Hennessy refused to do the "walk-and-turn" and "one-leg-stand" tests, claiming a lack of coordination, but she did do the horizontal gaze nystagmus (HGN) test. The videotape of the stop shows Hennessy taking a misstep and slightly stumbling upon Benningfield's request that she move over a little to start the HGN test. Benningfield said that while doing the HGN test, Hennessy had a "significant swing" and was unsteady, and she showed all of the six clues of impairment on the HGN test.

Benningfield next had Hennessy do the Rhomberg test, in which she looked straight up and with her eyes closed estimated the passage of thirty seconds. Her time estimation was close, but she had a "significant" three-inch sway from front to back (noticeable on the videotape), which Benningfield said was an indication of intoxication. When Hennessy refused to answer more questions about where she was coming from and how much she had had to drink, he arrested her for driving while intoxicated and took her to the police station, where she refused to provide a breath or blood specimen after being advised of her rights thereto.

After being given her statutory and *Miranda* warnings, Hennessy answered some of the officer's questions, stating that she

was driving home, had last eaten at 7:00 p.m., that she had drank Budweiser beer but did not know how much or when her last drink was, that she was not ill, injured, or on medication, and that she had napped that afternoon. After the videotape was shown, Benningfield testified that, based on his observations, Hennessy was intoxicated and had lost the normal use of her physical and mental faculties due to alcohol. Hennessy's stipulation to her two prior DWI convictions was read into evidence.

On cross-examination, Benningfield admitted that Hennessy did not display some of the signs of intoxication (e.g., her speech was not slurred and she estimated time on the Rhomberg test well) and that her driving was not necessarily indicative of intoxication. This testimony is the crux of Hennessy's insufficiency complaints. But despite this alleged absence of some evidence of intoxication, viewing all the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Hennessy was guilty of driving while intoxicated. And considering all of the evidence in a neutral light, we find that the jury was justified in finding Hennessy guilty. We overrule her first and second issues.

**Pre-arrest Silence**

Hennessy's third issue asserts that the trial court erred in admitting evidence of her pre-arrest silence. The trial court denied her pretrial motion to suppress. We review a trial court's denial of a motion to suppress under the well-established bifurcated standard of review. See *Gentry v. State,* 259 S.W.3d 272, at 273 (Tex.App.–Waco 2008, no pet. h.).

Benningfield pulled over Hennessy after observing her hit and drive up on the curb for ten to fifteen yards before pulling back onto the street, drive on the yellow lane dividing line with her two left tires, and then make a wide right turn. The stop, Benningfield's conversations with Hennessy, and her performance of field sobriety tests were videotaped, and the trial court reviewed the videotape, as have we.

Early in their encounter—beginning before she even got out of her car—and before her arrest, Hennessy would not answer some of Benningfield's questions about where she had been and how much she had to drink, saying that she really didn't want to say anything, that she didn't want to incriminate herself, and that she wanted a lawyer. Hennessy moved to suppress her pre-arrest and pre-*Miranda* silence. The State agreed to redact the portion of the videotape after Hennessy requested a lawyer. The trial court ruled that the remainder of the videotape—including her several refusals to answer questions—was admissible.

Hennessy argues that evidence of her invocation of her constitutional right to remain silent and to not incriminate herself is inadmissible. See *Hardie v. State,* 807 S.W.2d 319, 322 (Tex.Crim.App.1991). She contends that she was effectively in custody for Fifth Amendment and *Miranda* purposes.

■ "There are three recognized categories of interaction between the police and citizens: encounters, investigative detentions and arrests." *State v. Rudd,* 255 S.W.3d 293, 298 (Tex.App.–Waco 2008, pet. ref'd). Benningfield testified that he had stopped Hennessy to investigate his suspicion that she was driving while intoxicated and that she was not free to leave until he had completed his investigation and traffic stop. Under nearly identical facts, the Fort Worth Court, primarily relying on *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), and

*State v. Stevenson,* 958 S.W.2d 824, 827 (Tex.Crim.App.1997), recently held that the driver's statements to the officer were the result of an investigative detention, not a custodial interrogation. *See Arthur v. State,* 216 S.W.3d 50, 56–58 (Tex.App.–Fort Worth 2007, no pet.).

 A stop is deemed an investigative detention when a police officer detains a person reasonably suspected of criminal activity to determine his identity or to momentarily maintain the status quo to garner more information. *Hoag v. State,* 728 S.W.2d 375, 380 (Tex.Crim.App.1987). An investigative detention must last no longer than necessary to effectuate the purpose of the stop and must involve actual investigation. *Akins v. State,* 202 S.W.3d 879, 885 (Tex.App.–Fort Worth 2006, pet. ref'd). An arrest occurs when a person's liberty of movement is restricted or restrained by an officer or person executing a warrant of arrest or without a warrant. TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 2005); *Medford v. State,* 13 S.W.3d 769, 772–73 (Tex.Crim.App.2000); *Amores v. State,* 816 S.W.2d 407, 411 (Tex. Crim.App.1991).

 Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In determining whether an interrogation is custodial for purposes of *Miranda,* we look to the objective circumstances, not to the subjective views harbored by either the interrogating officer or the person being questioned. *See Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994). The determination of custody must be made on an ad hoc basis, after considering all of the objective circumstances. *See Dowthitt v. State,* 931 S.W.2d 244, 255 (Tex.Crim.App.1996). The subjective views of the interrogating officer and the person being questioned are relevant only to the extent that they may be manifested in the words or actions of law enforcement officials. *See id.* at 254.

 In determining whether a noncustodial encounter has escalated into custodial interrogation, we look to the four factors discussed in *Dowthitt:* (1) when the suspect is physically deprived of her freedom of action in any significant way, (2) when law enforcement officers tell a suspect that she cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that her freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that she is free to leave. *Stevenson,* 958 S.W.2d at 826 (citing *Dowthitt,* 931 S.W.2d at 255); *Arthur,* 216 S.W.3d at 57 (same). None of those factors is present here. We hold that Benningfield's questioning at the scene of the stop was not a custodial interrogation.

We now turn to whether Hennessy's pre-arrest and pre-*Miranda* statements that she did not want to answer Benningfield's questions (her pre-arrest, pre-*Miranda* "silence") were admissible as substantive evidence of guilt even if she were not in custody. In the trial court, she argued for suppression of her statements under the Fifth Amendment even if she was not in custody, and she re-urges that contention within her third issue, citing Seventh Circuit case law.

 The law is clear that if a defendant testifies, her pre-arrest silence can be used to impeach her. *See Jenkins v. Anderson,* 447 U.S. 231, 238–40, 100 S.Ct. 2124, 2129–30, 65 L.Ed.2d 86 (1980) (hold-

ing that defendant's pre-arrest silence could be used to impeach defendant because his failure to speak was before he was in custody and given *Miranda* warnings). Texas cases have re-stated this rule without distinguishing its proper role in impeachment. *See, e.g., Waldo v. State*, 746 S.W.2d 750, 755 (Tex.Crim.App.1988) ("Prearrest silence is a constitutionally permissible area of inquiry.") (citing *Jenkins); Rosas v. State*, 76 S.W.3d 771, 776 (Tex.App.–Houston [1st Dist.] 2002, no pet.) ("Comments made concerning pre-arrest silence are constitutionally permitted.") (citing *Waldo*, 746 S.W.2d at 755); *see also State v. Lee*, 15 S.W.3d 921, 926 n. 7 (Tex.Crim.App.2000) (noting that statement in *Waldo* was dicta), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex.Crim.App.2007).

Much less clear is the case where the defendant does not testify and the State offers a defendant's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt, which is what the State used it for here. In a request-for-counsel context, we recently stated that "the Supreme Court has never recognized the right of a person to invoke his *Miranda* rights anticipatorily.... Further, we do not believe the existing case law supports the right of an accused to invoke his *Miranda* rights in any context other than a custodial interrogation." *Russell v. State*, 215 S.W.3d 531, 536 (Tex.App.–Waco 2007, pet. ref'd) (citing *McNeil v. Wisconsin*, 501 U.S. 171, 182 n. 3, 111 S.Ct. 2204, 2211 n. 3, 115 L.Ed.2d 158 (1991)) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'..."). Because of its different context, *Russell* is not dispositive of the precise issue before us.

In 2000, the Court of Criminal Appeals, in the double-jeopardy context of holding that a prosecutor's opening statement that referred to the defendant's desire to remain silent in response to a detective's entreaty was not intended to induce a mistrial because, under the state of the law, the prosecutor's actions could not have been intentional or reckless and clearly erroneous—the issue was one of first impression in Texas and there was a split of authority among the federal circuits.[1] *Lee*,

---

1. The court in *Lee* noted:

The First, Sixth, Seventh and Tenth Circuits hold that prearrest, pre-*Miranda* silence is not admissible as substantive evidence of guilt. *Combs [v. Coyle*, 205 F.3d 269, 283 (6th Cir.2000) ]; *United States v. Burson*, 952 F.2d 1196, 1200–1201 (10th Cir.1991), *cert. denied*, 503 U.S. 997, 112 S.Ct. 1702, 118 L.Ed.2d 411 (1992); *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir.), *cert. denied*, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 383 (1989); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017–18 (7th Cir.1987). The Fifth, Ninth and Eleventh Circuits have held that prearrest, pre-*Miranda* silence is admissible as substantive evidence of guilt. *United States v. Oplinger*, 150 F.3d 1061, 1066–67 (9th Cir.1998); *United States v. Zanabria*, 74 F.3d 590 (5th Cir.1996); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir.1991). For a general discussion of the split among the federal courts, the underlying rationale for their holdings, and a historical analysis of the Fifth Amendment, *see* Maria Noelle Berger, Note, *Defining the Scope of the Privilege Against Self–Incrimination: Should Prearrest Silence be Admissible as Substantive Evidence of Guilt?*, 1999 U. ILL. L.REV. 1015 (1999). State courts are also split on the issue, with some courts holding that prearrest, pre-*Miranda* silence is not admissible as substantive evidence of guilt, *State v. Moore*, 131 Idaho 814, 965 P.2d 174, 180 (1998); *State v. Dunkel*, 466 N.W.2d 425, 428–29 (Minn.Ct.App.1991); *State v. Rowland*, 234 Neb. 846, 452 N.W.2d 758 (1990); *People v. DeGeorge*, 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11, 13 (1989); *Hartigan v. Commonwealth*, 31 Va.App. 243, 522 S.E.2d 406, 410 (1999), *reh'g granted; State v. Easter*, 130 Wash.2d 228, 922 P.2d 1285, 1291–92 (1996); *Tortolito v. State*, 901 P.2d 387, 390 (Wyo.1995), and

15 S.W.3d at 924–26. The court also assumed without deciding that the prosecutor's statement amounted to substantive evidence. *Id.* at 924 n. 3. The Dallas Court recently noted the continued absence of authority from the Court of Criminal Appeals and the United States Supreme Court on this issue. *Millson v. State*, 2008 WL 82242, at *7 (Tex.App.–Dallas Jan.9, 2008, pet. filed) (not designated for publication); *see* Wayne R. LaFave, et al., 3 Criminal Procedure § 9.6(a) & n. 48 (3d ed. 2007–08) ("The Supreme Court has not passed on use of such silence as substantive evidence of guilt in the prosecution's case-in-chief, a matter as to which there is a split of authority in the lower courts.");[2] *cf. Wyborny v. State*, 209 S.W.3d 285, 291–92 (Tex.App.–Houston [1st Dist.] 2006, pet. ref'd) (State's use of defendants post-arrest, pre-*Miranda* silence against him at trial violated his state

constitutional right to be free from self-incrimination).

We too will assume without deciding that the admission of Hennessy's pre-arrest, pre-*Miranda* silence as substantive evidence of guilt violates the Fifth Amendment. We thus turn to a harm analysis. Having assumed a constitutional violation, such an error requires reversal "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex.R.App. P. 44.2(a). In making this determination, we do not focus on the propriety of the trial's outcome but on calculating, as nearly as possible, the probable impact of the error on the jury in light of the other evidence. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex.Crim.App.2000). In other words, the question is not whether the legally admitted evidence is sufficient to support the conviction. *McCarthy v.*

other courts holding that prearrest, pre-*Miranda* silence does not implicate the Fifth Amendment, *State v. Leecan*, 198 Conn. 517, 504 A.2d 480, 484 (1986); *Key-El v. State*, 349 Md. 811, 709 A.2d 1305, 1310–11(Md.), [*overruled by Weitzel v. State*, 384 Md. 451, 863 A.2d 999, 1002 (Md.2004)], *cert. denied*, 525 U.S. 917, 119 S.Ct. 267, 142 L.Ed.2d 220 (1998); *State v. Masslon*, 746 S.W.2d 618, 626 (Mo.Ct.App.1988); *State v. Dreher*, 302 N.J.Super. 408, 695 A.2d 672, 705 (App.Div.1997), [*disapproved by State v. Brown*, 190 N.J. 144, 919 A.2d 107, 116 n. 1 (N.J.2007)], *cert. denied*, 152 N.J. 10, 702 A.2d 349 (1997) and *cert. denied*, 524 U.S. 943, 118 S.Ct. 2353, 141 L.Ed.2d 723 (1998); *State v. Helgeson*, 303 N.W.2d 342, 348–49 (N.D.1981). *Lee*, 15 S.W.3d at 924 n. 5.

2. Numerous commentators have written on this issue and noted the split of authority; some have concluded that pre-arrest silence ought to be protected by the Fifth Amendment and inadmissible as substantive evidence of guilt. Meaghan Elizabeth Ryan, Comment, *Do You Have the Right to Remain Silent?: The Substantive Use of Pre–Miranda Silence*, 48 Ala. L.Rev. 903 (2007); Sara Ciarelli, *Pre-*

*arrest Silence: Minding that Gap Between Fourth Amendment Stops and Fifth Amendment Custody*, 93 J.Crim. L. & Criminology 651 (2003); Marcy Strauss, *Silence*, 35 Loy. L.A. L.Rev. 101 (2001); Maria Noelle Berger, Note, *Defining the Scope of the Privilege Against Self-Incrimination: Should Prearrest Silence be Admissible as Substantive Evidence of Guilt?*, 1999 U. Ill. L.Rev. 1015 (1999); Jane Elinor Notz, Comment, *Prearrest Silence as Evidence of Guilt: What You Don't Say Shouldn't Be Used Against You*, 64 U. Chi. L.Rev. 1009 (1997).

Others have not. *See* Michael J. Hunter, *The Man on the Stairs Who Wasn't There: What Does a Defendant's Pre-arrest Silence Have to do with Miranda, the Fifth Amendment, or Due Process?*, 28 Hamline L.Rev. 277 (2005); Adam M. Stewart, *The Silent Domino: Allowing Pre-arrest Silence as Evidence of Guilt and the Possible Effect on Miranda*, 37 Suffolk U.L.Rev. 189 (2004); Jeffrey D. Waltuck, Comment, *Remaining Silent: A Right with Consequences*, 38 J. Marshall L.Rev. 649 (2004); Stefanie Petrucci, Comment, *The Sound of Silence: The Constitutionality of the Prosecution's Use of Prearrest Silence in its Case–in–Chief*, 33 U.C. Davis L.Rev. 449 (2000).

*State,* 65 S.W.3d 47, 55 (Tex.Crim.App. 2001). Rather, the question is whether the complained-of evidence contributed to the jury's verdict, regardless of the sufficiency of the evidence, independent of the complained-of evidence, to sustain the conviction. *Id.* Asked in another way, the question is whether a reasonable probability exists that the error moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question. *Wesbrook,* 29 S.W.3d at 119.

In this case, we find the error harmless beyond a reasonable doubt. First of all, and in spite of the absence of breath-alcohol or blood-alcohol evidence due to her refusal, there was ample evidence of intoxication: Hennessy's erratic driving; her stumbling and swaying during the field sobriety tests; her clues on the HGN test; Benningfield's opinion testimony that she was intoxicated; and her two admissions— one before and one after her arrest and her *Miranda* warnings—that she had been drinking beer. Second, we are not convinced that Hennessy's several refusals to answer questions, along with Benningfield's brief testimony and the State's closing argument about her refusals, moved the jury from a state of nonpersuasion to persuasion on whether Hennessy was intoxicated. We overrule her third issue.

Having overruled all of Hennessy's issues, we affirm the trial court's judgment.

Chief Justice GRAY concurs in the judgment to the extent that it affirms the conviction but due to the dicta included in the Court's opinion, which he does not join in any regard, he cannot join the opinion. A separate opinion will not issue.