In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00089-CR

                                                ______________________________

 

 

                                  RICKY ALLEN BARNETT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                              Delta County, Texas

                                                             Trial
Court No. 6884

 

                                                             
                                     

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Ricky
Allen Barnett and his wife, Cynthia, had experienced a rocky marriage for some
fifteen years and Cynthia had once again moved out of their house, this time
moving herself and some of their five children into a Delta County house that
belonged to Cynthia’s grandparents. 
Shortly before sunrise on June 24, 2007, an intruder entered that house
and shot Cynthia with a rifle as she slept on the couch.  A lucid Cynthia indicated that she did not see
her attacker and did not know his identity. 
Despite that lucidity, Cynthia then died of the gunshot wound she
sustained.  Barnett was convicted of
capital murder in Cynthia’s death and has effected an appeal of his conviction.

            Barnett
maintains in his appeal that his written confession was erroneously admitted
into evidence because (1) it was obtained after he had been arrested and
detained on a facially invalid arrest warrant and (2) it was obtained through
misrepresentations made to him and under duress when peace officers threatened
that he would be sentenced to the death penalty unless he confessed.  Barnett also urges that the evidence of his
guilt is insufficient to support his conviction.  We find no reversible error and affirm the
judgment of the trial court.

            Time of Arrest

            Barnett
attaches great significance to defining when he was actually under arrest.  Custodial interrogation is “questioning initiated
by law enforcement officers after a person has been taken into custody or
otherwise deprived of his freedom of action in any significant way.”  Miranda
v. Arizona, 384 U.S. 436, 444 (1966). 
Barnett first argues in his brief that he was in custody and under
arrest when his statements were given, presumably believing that the State
would argue otherwise; the State’s brief does not dispute this.  A person is in “custody” only if, under the circumstances,
a reasonable person would believe his freedom of movement was restrained to the
degree associated with a formal arrest.  Dowthitt
v. State, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); Rodgers v. State,
111 S.W.3d 236, 239–41 (Tex. App.—Texarkana 2003, no pet.).  In determining whether an interrogation is
custodial for purposes of the application of Miranda, we look to the objective circumstances, not to the
subjective views harbored by either the interrogating officer or the person
being questioned.  See Stansbury v. California, 511 U.S. 318, 323 (1994).  The subjective views of the interrogating
officer and the person being questioned are relevant only to the extent that
they may be manifested in the words or actions of law enforcement officials.  See
Dowthitt, 931 S.W.2d at 254.

            The
court in Dowthitt discussed four
factors as reflecting that a person is in custody:  (1) when the suspect is physically
deprived of freedom of action in any significant way, (2) when law enforcement
officers tell a suspect that leaving is no longer a choice, (3) when law
enforcement officers create a situation that would lead a reasonable person to
believe that the detainee’s freedom of movement has been significantly
restricted, and (4) when there is probable cause to arrest and law enforcement
officers do not tell the suspect that the suspect is free to leave.  Dowthitt,
931 S.W.2d at 255; Hennessy v. State,
268 S.W.3d 153, 159 (Tex. App.—Waco 2008, pet. ref’d).

            The
record shows that Hunt County Sheriff’s officers apprehended Barnett at
gunpoint from his Wolfe City, Hunt County, home at 5:00 a.m. the day following
Cynthia’s slaying.  He was handcuffed and
transported to the Hunt/Delta County line, where he was transferred to a Delta
County sheriff’s department vehicle and taken thence to the Delta County
Jail.  He was requested to change into
jail attire (being told that it was policy to question only those who were
garbed in prisoner uniforms), which he did, and was given his Miranda warnings.  He was then questioned by officers.

            While
talking to Barnett, officers warned him that he “had to tell the story” and that
if he did not do so, the district attorney was going to make a decision to
inject him and that “We’re just going to get the gurney ready, and then they’re
going to stick it in your arm.”  Barnett
maintains that questions about when he was actually placed under arrest and
these threats of death rendered the statement inadmissible. 

            During
this period of time, there were five video recordings made of interviews with
Barnett (during three of which he made at least partial confessions or
inculpatory statements) and a final written confession which generally
summarized the statements in the fifth and final interview (introduced as
Exhibit 40).  Under these circumstances,
it is obvious that Barnett was in custody. 


            Allegation of Trickery or Coercion in
Obtaining Statements

            The
issue as further framed is whether his later custodial statements were
involuntary because of the trickery, lies, and threatening language utilized by
the officers.  There is an initial
question, however, about whether any complaint about the admission of his
statement was preserved for our review. 

            Barnett
requested a suppression hearing, seeking to suppress each of the video
recordings and the written confession. 
At the end of the hearing, the court ruled explicitly that the written
statement (Exhibit 42) was admissible, but made no ruling as to the video
recordings.  Although Barnett objected to
the admission of the written statement at trial, he indicated that he had no
objection to the introduction of any of the video recordings.  The State argues that because multiple other
exhibits were admitted with the affirmative agreement of defense counsel which
contained the same information as the written statement, any current claim of
error in the admission of the written statement was waived.   

            If
there is admission of erroneous testimony, that is not cause for reversal if
the same fact is proven by other testimony entered without objection,
regardless of which party introduced the other evidence.  Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (explaining rule of
harmless error, waiver, and common-law doctrine of curative
admissibility).  In this case, even if
the admission of the statement had been error, the same information was later
admitted through other renditions of the same statement without objection.  There is no suggestion or argument that the
later admission of evidence was designed to in some way rebut the prior admission.  We have reviewed the recordings of his five
interviews, all of which were admitted without objection.  

            The
objection raised and overruled by the trial court was to the written statement
by Barnett.  In summary, Barnett stated
in that written statement that he had shown his AK 47 rifle to a friend on the
night before the murder, that he talked to Cynthia on the telephone, and that
he drove over to her house.  He continued
that he had seen Darius (whom Barnett apparently perceived to be his rival for
the affection of Cynthia) in the house with her, and believed that Darius was
sleeping on the couch.  The statement
further said that Barnett went into the house through a window, entered the
living room, and shot the person reclining on the couch.  Barnett related that he did not realize that
the target was actually his wife; he had fired a shot, heard her scream, and
ran away.  He went on to state that he
drove to Galveston, boarded the ferry, and threw the rifle into the water.  When he called back to East Texas and
discovered that Cynthia was dead, he returned to his home in Wolfe City and
turned himself in.  That statement was
signed and is dated June 28, 2007.     

            The
recording of his fifth and final interview (and admitted with the agreement of
counsel) has virtually the same content as the complained-of written
statement.  In two of the other four
interviews, although the extraneous details shift and change, Barnett also
admitted having fired the shot which killed his wife.  In the first interview, there was no
admission of guilt, and in the fourth, he denied the act and terminated the
interview.

            We
conclude that the objection was waived, and even if error existed, it was
rendered harmless by the admission of the same evidence in multiple forms, with
the agreement of counsel, that provided the same information.  We overrule the contention of error.[1]

            Error
in Arrest Warrant

            Barnett next contends that
reversible error is shown because the trial court erred by denying his motion
to suppress his statement due to an error in the arrest warrant.  

            Although
the arrest warrant is signed by the county judge of Delta County, it indicated
that the issuing court was the district court of Delta County, and ordered the
officer to bring Barnett before the district court, not the county court.

            The
State did not respond to this contention. 
We have reviewed the warrant.  It
was obviously prepared using a form intended for use by a different court than
the judge who signed it.   However, there
is no suggestion that the magistrate who actually issued the warrant was not
authorized to do so, or that the error in formatting was an error of any
genuine significance in this case.  The
contention of error refers only to Articles 18.09 and 18.10 of the Texas Code
of Criminal Procedure as the controlling authorities, and we glean nothing from
those statutes that supports this argument. 
Tex. Code Crim. Proc. Ann.
art. 18.09 (Vernon Supp. 2009), art. 18.10 (Vernon 2005).  

            Even
if the error were more severe or consequential than indicated here, one must
remember that the statements were admitted with Barnett’s acquiescence. 

            We
overrule the contention of error.

            Sufficiency
of the Evidence

            Barnett next contends that the
evidence is legally and factually insufficient to support the verdict.  We review the legal and factual sufficiency of
the evidence supporting a conviction under well-established standards.  In conducting a legal sufficiency review, we
consider the evidence in the light most favorable to the verdict to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009).  We must give
deference to “the responsibility of the trier of fact to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts.” 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson
v. Virginia, 443 U.S. 307, 318–19 (1979)). 
We are not required to determine whether we ourselves believe that the
evidence at trial established guilt beyond a reasonable doubt; rather, when
faced with conflicting evidence, we must presume that the trier of fact
resolved any such conflict in favor of the prosecution, and we must defer to
that resolution.  State v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  In conducting a factual sufficiency review,
we consider the evidence in a neutral light. 
Watson v. State, 204 S.W.3d
404, 414–15 (Tex. Crim. App. 2006).

            Barnett
concentrates his arguments regarding insufficiency toward ancillary details
given in his statements and upon evidence which was never presented.  For instance, in one of Barnett’s statements,
he said that he had driven to Galveston, boarded a ferry, and tossed his AK 47
rifle overboard; in another, he maintained that he had thrown the rifle into
Lake Ray Hubbard.  Barnett points out
that the witness who said that he had seen Barnett with such a rifle on the
night before the murder admitted that the witness had been drinking alcohol
that night.  He alludes to the failure of
the State to introduce the actual weapon, the spent cartridge, fingerprints,
DNA, or eyewitness accounts (other than Barnett).  

            We
have previously discussed the evidence which was presented to the jury, which
in large part consists of Barnett’s admissions that he pulled the trigger on a
rifle while it was directed toward the person on the couch.  Cynthia was on the couch of that house and
was struck by a bullet, a bullet that caused her demise.  We conclude that the evidence is sufficient,
both legally and factually, to support the verdict.  We overrule the contention of error

            We
affirm the judgment. 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          May
11, 2010

Date Decided:             May
19, 2010

 

Do Not Publish

 











[1]We
need not address the issue of involuntariness based upon trickery or fear
engendered by the officers in this case. 
We note, however, that the determination of whether a confession is
voluntary is based on an examination of the totality of the circumstances
surrounding its acquisition, Reed v.
State, 59 S.W.3d 278, 281 (Tex. App.––Fort Worth 2001, pet. ref’d), and
that a confession is involuntary if circumstances show that the defendant’s
will was “overborne” by police coercion. 
Creager v. State, 952 S.W.2d
852, 856 (Tex. Crim. App. 1997).  A
defendant’s statement must not have been obtained by the influence of hope or
fear.  Id. (citing Cain v. State,
18 Tex. 387, 390 (1857)).  Even trickery
or deception does not make a statement involuntary unless the method was
calculated to produce an untruthful confession or was offensive to due
process.  Id.  The ultimate question is
whether the suspect’s will was overborne. 
Id.; Lugo v. State, 299 S.W.3d 445, 451 (Tex. App.––Fort Worth 2009,
pet. ref’d).  In this case, the only fear
was that of death by lethal injection, which the court could conclude in its
discretion was nothing more than a warning about the possible punishment for
the crime alleged.