# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00263-CV

**Robert Henneke, Appellant**

**v.**

**Texas Department of Public Safety, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-16-007398, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N[1]

Robert Henneke appeals from the trial court's final judgment affirming an administrative order authorizing the Texas Department of Public Safety (DPS) to suspend his driving privileges for 180 days for refusing to submit a specimen of breath or blood after being arrested for driving while intoxicated (DWI). The judgment also implicitly denied Henneke's requests for declarations under the Uniform Declaratory Judgments Act (UDJA). In four appellate issues, Henneke asks this Court to reverse the trial court's decision and to make several declarations. We will affirm the trial court's final judgment affirming the order of the Administrative Law

---

[1] Notice of appeal for this case was originally filed in this Court in December 2016, at which time the case was transferred to the El Paso Court of Appeals in compliance with a docket-equalization order issued by the Texas Supreme Court. On April 12, 2018, the Texas Supreme Court ordered that certain cases be transferred back to this Court from the El Paso Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018) (per curiam).

Judge (ALJ) authorizing DPS to suspend Henneke's driving privileges and declining to make the requested declarations.

## BACKGROUND

At the hearing before the ALJ, DPS presented evidence of the following facts. On January 21, 2016, Officer Robert Mitchell of the Austin Police Department observed Henneke travel at 47 miles per hour in a 35 miles-per-hour zone, change lanes without signaling, and drift from one lane to another while going around a curve. Officer Mitchell testified that he pulled Henneke over and smelled alcohol when he began speaking with him. The officer testified that Henneke had bloodshot, glassy eyes and that his speech was slurred. When Officer Mitchell asked Henneke about his alcohol consumption, Henneke invoked the Fifth Amendment and declined to answer the questions. Henneke asked Officer Mitchell whether he was under arrest, and Officer Mitchell responded that he was not under arrest. Henneke continued to invoke the Fifth Amendment and declined to participate in field sobriety tests. Eventually, Officer Mitchell placed Henneke under arrest for DWI. Officer Mitchell then read Henneke the DIC-24 Statutory Warning informing Henneke that his driving privileges would be suspended if he refused to provide a breath or blood specimen. Henneke refused to provide a specimen. At the hearing, Henneke presented, and the ALJ admitted, evidence that Henneke's blood was later drawn pursuant to a warrant and tested and that the test showed that he had a blood alcohol concentration (BAC) of 0.043 at the time of the test.

After the hearing, the ALJ issued an order authorizing DPS to suspend Henneke's driving privileges for 180 days. The order included findings of fact and conclusions of law. Among other things, the ALJ found the following:

2

1. [T]here was reasonable suspicion to stop or detain Defendant in that Officer R. Mitchell . . . observed and radared Defendant's vehicle traveling at 47 mph in a 35 mph zone, failed to indicate lane change numerous times, and while negotiating a curve the vehicle drifted from the left lane into the right lane . . . .

\*\*\*

3. On the same date, probable cause to arrest the Defendant existed in that there was probable cause to believe that Defendant was operating a motor vehicle in a public place while intoxicated, because in addition to the facts in No. 1: Officer Mitchell observed Defendant's speech was slurred, Defendant's eyes were bloodshot and glassy, his attitude was uncooperative, polite and cocky, and his balance was sure. The officer also detected a strong odor of an alcoholic beverage coming from Defendant's breath. Defendant refused to participate in any Field Sobriety Test, asserting his Fifth Amendment constitutional right.

4. Defendant was placed under arrest and was properly asked to submit a specimen of breath or blood.

5. After being requested to submit a specimen of breath or blood, Defendant refused.

Henneke appealed the ALJ's decision to the trial court. In his live pleading, Henneke brought four causes of action. In count one, Henneke asked the trial court to reverse the ALJ's order. In count two, Henneke sought a declaration under the UDJA that his refusal to perform field sobriety tests and his invocation of his constitutional rights in response to Officer Mitchell's interrogation "is not evidence supporting probable cause that [he] was driving while intoxicated." In count three, Henneke sought a declaration that a person with an alcohol concentration of less than 0.08 is not intoxicated due to the consumption of alcohol as a matter of law and that Henneke was not intoxicated. Finally, in count four, Henneke alternatively asked the trial court to declare that Texas Penal Code section 49.04, as applied to him, is void for vagueness. Henneke also filed a motion for summary judgment on these issues. DPS responded to Henneke's petition and argued in a plea

3

to the jurisdiction that the trial court should dismiss Henneke's UDJA claims for want of subject-matter jurisdiction.

The trial court issued a final judgment affirming the ALJ's order and denying all other relief. This appeal followed.

## DISCUSSION

**Suspension of Driving Privileges**

In his first two issues, Henneke challenges the trial court's affirmance of the ALJ's order authorizing DPS to suspend his driving privileges for 180 days.

We review the trial court's judgment affirming the ALJ's decision de novo. *See Texas Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 878 (Tex. App.—Fort Worth 2009, no pet.); *Texas State Sec. Bd. v. Miller*, No. 03-06-00365-CV, 2009 WL 1896075, at *2 (Tex. App.—Austin July 1, 2009, no pet.) (mem. op.); *Texas Dep't of Pub. Safety v. Struve*, 79 S.W.3d 796, 800 (Tex. App.—Corpus Christi 2002, pet. denied); *Texas Dep't of Pub. Safety v. Favela*, No. 03-99-00742-CV, 2000 WL 1471772, at *1 (Tex. App.—Austin Oct. 5, 2000, no pet.) (not designated for publication); *Texas Dep't of Pub. Safety v. Valdez*, 956 S.W.2d 767, 769 (Tex. App.—San Antonio 1997, no pet.).

We review the ALJ's decision under the substantial-evidence rule. *See Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam) ("[C]ourts review administrative license suspension decisions under the substantial evidence standard."); *Jaroszewicz v. Texas Dep't of Pub. Safety*, No. 03-15-00340-CV, 2016 WL 4506163, at *2 (Tex. App.—Austin Aug. 26, 2016, no pet.) (mem. op.). Under this standard,

4

[A] court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174; *see Mireles*, 9 S.W.3d at 131; *Jaroszewicz*, 2016 WL 4506163, at \*2. We must affirm administrative findings if there is more than a scintilla of evidence to support them, even if the evidence preponderates against the ALJ's decision. *See Mireles*, 9 S.W.3d at 131; *Peters v. Texas Dep't of Pub. Safety*, 404 S.W.3d 1, 3 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

Before authorizing the suspension of Henneke's driving privileges, the ALJ was required to find that reasonable suspicion or probable cause existed for Officer Mitchell to stop or arrest Henneke, that probable cause existed to believe that Henneke was operating a motor vehicle in a public place while intoxicated, that Officer Mitchell placed Henneke under arrest and requested that he submit to the taking of a specimen, and that Henneke refused to submit to the taking of a

5

specimen. *See* Tex. Transp. Code §§ 724.042, .043. Henneke challenges the ALJ's finding that Officer Mitchell had probable cause to arrest him for DWI.

At the administrative hearing, DPS presented evidence of the following:

- Henneke committed several traffic violations within a short time, including being unable to maintain his lane while going through a curve, speeding, and failing to use his turn signals.

- Officer Mitchell detected a strong odor of alcohol from Henneke.[2]

- Henneke had bloodshot, glassy eyes.

- Henneke had slurred speech.

- Henneke refused to answer any questions about alcohol consumption.

- Henneke refused to participate in field sobriety tests.

- Officer Mitchell arrested Henneke and requested that he give a breath or blood specimen.

- Henneke refused to give a breath or blood specimen.

"Probable cause 'exists when facts and circumstances within the officer's knowledge or about which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed.'" *Dwinal v. State*, No. 03-17-00012-CR, 2017 WL 5077980, at *4 (Tex. App.—Austin Nov. 3, 2017, no pet.) (mem. op., not designated for publication) (quoting *Lopez v. State*, 223 S.W.3d 408, 414 (Tex. App.—Amarillo

---

[2] In his appellate brief, Henneke asserts that Officer Mitchell did not testify that he smelled a *strong* odor of alcohol but only an odor of alcohol. However, Officer Mitchell's "Affidavit for Warrant of Arrest and Detention," which was an exhibit in the administrative hearing, notes, "Alcoholic Beverage Odor: Strong[.]"

6

2006, no pet.)). We review the ultimate question of whether there was probable cause de novo. *See Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009); *Dwinal*, 2017 WL 5077980, at \*3; *Sosa v. State*, No. 03-13-00764-CR, 2015 WL 5000918, at \*1 (Tex. App.—Austin Aug. 18, 2015, no pet.) (mem. op., not designated for publication); *Texas Dep't of Pub. Safety v. Phillips*, No. 13-00-215-CV, 2001 WL 34615350, at \*3 (Tex. App.—Corpus Christi Oct. 25, 2001, no pet.) (not designated for publication).

Henneke argues that the patrol car video conclusively proves that he did not slur his speech. We have reviewed the video, and while we cannot detect slurred speech, we cannot determine with certainty that Officer Mitchell was not able to detect slurred speech. *See State v. Duran*, 396 S.W.3d 563, 570–71 (Tex. Crim. App. 2013) ("Although appellate courts may review *de novo* indisputable visual evidence contained in a videotape, the appellate court must defer to the trial judge's factual finding on whether a witness actually saw what was depicted on a videotape or heard what was said during a recorded conversation.") (cleaned up).[3] Similarly, we are in no position to question Officer Mitchell's testimony concerning Henneke's driving and bloodshot, glassy eyes. "In a contested case hearing, the ALJ is the sole judge of witness credibility and is free to accept or reject the testimony of any witness or even accept part of the testimony of one witness and disregard the remainder." *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex. App.—Austin 2005, no pet.) (cleaned up).

---

[3] *See* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017) (discussing the "cleaned up" parenthetical).

Henneke also argues that it was unconstitutional for the ALJ to consider the fact that he refused to answer Officer Mitchell's questions or participate in field sobriety tests as evidence supporting probable cause for arrest. Because we are bound by precedent from the Texas Court of Criminal Appeals, we must disagree. In *Salinas v. State*, the court stated, "We hold that pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment right against compelled self-incrimination, and that prosecutors may comment on such silence regardless of whether a defendant testifies." 369 S.W.3d 176, 179 (Tex. Crim. App. 2012), *aff'd*, 570 U.S. 178 (2013). In a case similar to this one, one of our sister courts relied on *Salinas* and explained that a DWI suspect's silence in response to questioning on the scene by an officer could be used as a factor supporting a finding of probable cause for arrest:

> Appellant asserts that his silence in the face of questioning may not be considered in a probable-cause determination. Appellant directs us to *Miranda v. Arizona*, 384 U.S. 436, 438 (1966), and the privilege against self-incrimination under the Fifth Amendment to the United States and Texas Constitutions. Appellant never preserved a *Miranda* challenge here. Further, pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment, and may be used against a defendant.

*Pelayo v. State*, No. 14-16-00528-CR, 2017 WL 3567835, at *4 (Tex. App.—Houston [14th Dist.] Aug. 17, 2017, no pet.) (mem. op., not designated for publication) (citing *Salinas*); *see Adair v. State*, No. 03-11-00318-CR, 2013 WL 6665033, at *10 (Tex. App.—Austin Dec. 12, 2013, no pet.) (mem. op., not designated for publication) ("[I]f a defendant invokes his right to remain silent during a police interview prior to his arrest, and prior to being read his *Miranda* warnings, then his silence is admissible in trial as substantive evidence of his guilt, at least in Texas.").

A traffic stop and DWI investigation, without more, is not a custodial interrogation requiring *Miranda* warnings. *See State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997) ("Obviously, the mere fact that the suspect becomes the focus of a criminal investigation does not convert a roadside stop into an arrest."); *Boyd v. State*, No. 12-17-00360-CR, 2018 WL 3203430, at *4 (Tex. App.—Tyler June 29, 2018, no pet. h.) (mem. op., not designated for publication) ("An officer may detain a person in order to gather information in the course of a roadside investigation before placing the person in custody under *Miranda*."); *Kutch v. State*, No. 12-17-00103-CR, 2018 WL 2715367, at *5 (Tex. App.—Tyler June 6, 2018, no pet. h.) (mem. op., not designated for publication) ("A traffic stop does not constitute 'custody' for *Miranda* purposes."); *Villalobos v. State*, No. 14-16-00593-CR, 2018 WL 2307740, at *4 (Tex. App.—Houston [14th Dist.] May 22, 2018, no pet. h.) (not designated for publication) ("Persons temporarily detained for purposes of investigation are not 'in custody' for *Miranda* purposes, and thus the right to *Miranda* warnings is not triggered during an investigative detention."); *Martin v. State*, No. 07-16-00409-CR, 2018 WL 2031856, at *6 (Tex. App.—Amarillo May 1, 2018, no pet. h.) (mem. op., not designated for publication) ("Here, appellant made the statement that he did not want to talk anymore while he was temporarily detained for a routine traffic stop. Such a stop does not rise to the level of a custodial interrogation. Because appellant's statement did not stem from a custodial interrogation, it violates no privilege and its exclusion is not required.") (citation omitted); *State v. Dewbre*, No. 03-15-00786-CR, 2017 WL 3378882, at *5 (Tex. App.—Austin July 31, 2017, pet. ref'd) (mem. op., not designated for publication) ("A traffic stop that includes questioning and field-sobriety tests does not, without more, rise to the level of a custodial interrogation."). Therefore, under the

9

Texas Court of Criminal Appeals's holding in *Salinas*, the Fifth Amendment did not prevent Officer Mitchell or the ALJ from using Henneke's refusal to answer questions as a factor in their probable-cause determinations.[4]

The United States Supreme Court affirmed the *Salinas* decision. *See Salinas v. Texas*, 570 U.S. 178, 191 (2013) (plurality op.). There was no Supreme Court majority opinion in *Salinas*—Justice Alito's opinion announcing the judgment of the Court was joined by only two additional justices. *See id.* at 180–81 (plurality op.). Moreover, the plurality opinion expressly declined to decide "whether the prosecution may use a defendant's assertion of the privilege against self-incrimination during a noncustodial police interview as part of its case in chief." *Id.* at 183 (plurality op.). In addition, Justices Thomas and Scalia, who concurred only in the judgment, would have held that the Fifth Amendment does not protect pre-custodial silence—the conclusion reached by the Texas Court of Criminal Appeals. *See id.* at 191–93 (Thomas, J., concurring). For these reasons, we conclude that this Court is still bound by the Texas Court of Criminal Appeals's holding in *Salinas*.

Because Officer Mitchell's questioning of Henneke was not a custodial interrogation under *Miranda* and its progeny, the Fifth Amendment did not protect his right to remain silent, and the ALJ did not err in considering his refusal to answer the questions as a factor in her probable-cause determination.

---

[4] In his appellate brief, Henneke cites *Hennessy v. State*, 268 S.W.3d 153, 161 (Tex. App.—Waco 2008, pet. ref'd), for the proposition that "[a]dmission of pre-arrest, pre-*Miranda* evidence of silence as guilt violates the Fifth Amendment." However, *Hennessy* did not so hold—it merely assumed this without deciding. *Id.* In addition, *Hennessy* was decided before the Texas Court of Criminal Appeals held in *Salinas* that pre-arrest silence is *not* protected by the Fifth Amendment.

Similarly, we conclude that Officer Mitchell and the ALJ could consider Henneke's refusal to participate in the field sobriety tests as evidence supporting probable cause for arrest for DWI. *See State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.—Austin 2000, no pet.) (considering defendant's refusal to participate in field sobriety tests as "part of the totality of the circumstances" in determining whether officer had probable cause for arrest); *see also Jones v. State*, No. 09-15-00308-CR, 2017 WL 2871066, at *2 (Tex. App.—Beaumont July 5, 2017, no pet.) (mem. op., not designated for publication) ("Additionally, Jones was evasive when he was asked how much and how recently he had been drinking, and he refused to participate in field sobriety tests. These indicators weigh in favor of finding probable cause for driving while intoxicated."); *Texas Dep't of Pub. Safety v. Pena*, No. 13-15-00280-CV, 2017 WL 2608290, at *4 (Tex. App.—Corpus Christi June 15, 2017, pet. denied) (mem. op., not designated for publication) ("Furthermore, at the time of his arrest, Pena's breath smelled of alcohol, his eyes were bloodshot red, his speech was slurred, his balance was unsteady, and he refused to take a field sobriety test—all signs associated with intoxication."); *Gilfeather*, 293 S.W.3d 875, 880 ("[T]his court and numerous other courts of appeals have held that the refusal to participate in field sobriety tests is a factor to be considered in the totality of the circumstances.") (collecting cases).

Moreover, even without considering Henneke's refusal to answer Officer Mitchell's questions or participate in field sobriety tests, we would still conclude that Officer Mitchell had probable cause to arrest Henneke for DWI because Officer Mitchell observed Henneke commit several traffic violations in a short time, detected a strong odor of alcohol on Henneke's breath, and observed that Henneke had bloodshot, glassy eyes and slurred speech. *See Pena*, 2017 WL 2608290, at *4 (listing smell of alcohol, bloodshot eyes, and slurred speech as signs of intoxication);

11

*Gilfeather*, 293 S.W.3d at 880–81 (listing speeding, bloodshot, glassy eyes, and strong odor of alcohol as signs of intoxication); *Garrett*, 22 S.W.3d at 654 (listing "unlawful and erratic driving behavior," strong odor of alcohol, and watery eyes as signs of intoxication).[5]

Henneke also argues that this Court should reverse the ALJ's decision because the ALJ failed to recount certain facts favorable to Henneke in her findings of fact, including that Henneke safely pulled into a parking space when being stopped, that he "quickly and correctly retrieved and presented his driver's license upon demand," and that he "stood in one place without swaying while being interrogated by Mitchell for nearly eight minutes." However, Henneke cites no authority for the proposition that an ALJ must include every relevant fact in her findings of fact and conclusions of law. Instead, Henneke relies on *Cullen*, in which the Texas Court of Criminal Appeals held that "the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (declaring standard of appellate review of trial-court factfinding in a criminal proceeding). We conclude that the facts cited by Henneke that the ALJ failed to specifically detail in her order would not affect our analysis of whether probable cause existed for Officer Mitchell to arrest Henneke because the ability to drive a short distance and stand in one place is not overwhelming evidence of sobriety that would negate

---

[5] In his appellate brief, Henneke argues that an opinion of the United States Supreme Court authored by Justice Scalia stated that "[s]peeding and not using a turn signal are not evidence of intoxication." However, even if Henneke is accurately portraying Justice Scalia's statements, the opinion that Henneke cites is not the opinion of the Court but rather a dissenting opinion. *See Navarette v. California*, 134 S. Ct. 1683, 1695 (2014) (Scalia, J., dissenting). Henneke has not cited any binding authority holding that speeding and other traffic violations cannot be considered as factors in determining whether an officer had probable cause to arrest a suspect for DWI.

other signs of intoxication. They are merely factors to consider when evaluating the totality of the circumstances. In addition, the ALJ did include some facts favorable to Henneke, such as the fact that his balance was sure.

Henneke further argues that the blood test conducted after his arrest, which showed that his BAC was 0.043, conclusively established that Henneke was not driving while intoxicated. However, Henneke presented no evidence before the ALJ that his BAC while driving was the same as his BAC when tested—that is, he presented no evidence extrapolating the results of the blood test back to the time of arrest. More importantly, the issue here is not guilt of the actual offense but probable cause, and probable cause is determined by examining the evidence known to the arresting officer at the time of the arrest, not by considering evidence obtained after the arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."); *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006) ("Subsequent evidence of guilt cannot validate the probable cause determination, nor can evidence of innocence invalidate it. Prescience is not required of the officers. Instead, courts must focus on the real world situation as known to the officer at that time. The question is whether they had a reasonable belief at the time."); *Duran*, 396 S.W.3d at 569 ("Information that the officer either acquired or noticed after a detention or arrest cannot be considered."); *Amores v. State*, 816 S.W.2d 407, 415 (Tex. Crim. App. 1991) ("In reviewing a warrantless arrest to determine the existence of probable cause, we look to the facts known to the officers at the time of the arrest . . . ."); *Adkins v. State*, 764 S.W.2d 782, 785 (Tex. Crim. App. 1988) ("The test for determining the existence of probable cause for a warrantless arrest

13

has been stated as follows: Whether at that moment the facts and circumstances within the officer's knowledge and of which (he) had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense.") (cleaned up); *State v. Torrez*, 490 S.W.3d 279, 285 (Tex. App.—Fort Worth 2016, pet. ref'd) ("[T]he recording from Sergeant West's patrol car . . . does not negate Sergeant West's initial belief—found by the trial court to be credible—that reasonable suspicion existed to initiate a traffic stop at the time he observed appellee's car.") (cleaned up). Therefore, even assuming, without deciding, that Henneke is correct that his later blood test conclusively demonstrated that he was not driving while intoxicated, this fact would not be dispositive in determining whether Officer Mitchell had probable cause to arrest Henneke for DWI.

We conclude that Officer Mitchell had probable cause to arrest Henneke for DWI because there was evidence before the ALJ that Henneke committed several traffic violations, smelled strongly of alcohol, had bloodshot, glassy eyes, had slurred speech, refused to answer Officer Mitchell's questions, and refused to take field sobriety tests. We further conclude that substantial evidence supports the ALJ's decision authorizing DPS to suspend Henneke's driving privileges for 180 days.

**Declarations Concerning the Fifth Amendment**

In his first issue, Henneke also challenges the trial court's decision to decline to issue declaratory judgments that his "invocation of his Fifth Amendment right and refusal to participate in the tests is not probative evidence of driving while intoxicated" and "that his invocation of his constitutional rights in response to Officer Mitchell's interrogation is not evidence supporting

14

probable cause that he was driving while intoxicated." We review a trial court's ruling on a UDJA claim as we review other judgments. *See* Tex. Civ. Prac. & Rem. Code § 37.010; *Waldrop v. Waldrop*, No. 02-15-00058-CV, 2018 WL 2728438, at *3 (Tex. App.—Fort Worth June 7, 2018, no pet. h.) (en banc). In ruling against Henneke on his UDJA claims, the trial court implicitly denied his motion for summary judgment; therefore, we review the trial court's ruling de novo. *See ConocoPhillips Co. v. Koopmann*, 542 S.W.3d 643, 651 (Tex. App.—Corpus Christi 2016), *aff'd*, 547 S.W.3d 858 (Tex. 2018).

Following the precedent discussed above, we conclude that a suspect's refusal to participate in field sobriety tests may be considered as a factor in determining whether probable cause existed for arrest for DWI. *See, e.g.*, *Gilfeather*, 293 S.W.3d 875, 880; *Garrett*, 22 S.W.3d at 655. We further conclude that a suspect's pre-arrest, pre-*Miranda* refusal to answer questions may be considered as a factor in evaluating probable cause. *See, e.g.*, *Salinas*, 369 S.W.3d at 179; *Pelayo*, 2017 WL 3567835, at *4. Therefore, we conclude that the trial court did not err in refusing to make the requested declarations.

Because we have concluded that the trial court did not err in affirming the ALJ's decision or in refusing to make the requested declarations concerning Henneke's invocation of the Fifth Amendment, we overrule Henneke's first two appellate issues.

**Declarations Concerning the Texas Penal Code's Definition of Intoxication**

In his third and fourth issues, Henneke contends that the trial court erred in denying his motion for summary judgment requesting that the trial court declare that a person with an alcohol concentration of less than 0.08 is not intoxicated due the consumption of alcohol as a matter of law

and that Henneke was not intoxicated because his BAC was less than 0.08, or, in the alternative, that Texas Penal Code sections 49.01(2)(B) and 49.04(a) considered together are void for vagueness. We review the trial court's denial of Henneke's motion for summary judgment on these issues de novo. *See Waldrop*, 2018 WL 2728438, at *3.

"[A] UDJA action will lie within the subject-matter jurisdiction of the district courts when there is (1) a justiciable controversy as to the rights and status of parties actually before the court for adjudication; and (2) that will be actually resolved by the declaration sought." *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 114 (Tex. App.—Austin 2007, no pet.); *see Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004) ("A declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy."); *A.I. Divestitures, Inc. v. Texas Comm'n on Envtl. Quality*, No. 03-15-00814-CV, 2016 WL 3136850, at *6 (Tex. App.—Austin June 2, 2016, no pet.) (mem. op.) ("A UDJA action is within the subject matter of the district court when there is a justiciable controversy as to the rights and status of parties actually before the court for adjudication that will actually be resolved by the declaration sought."). "A judicial decision reached without a case or controversy is an advisory opinion, which is barred by the separation of powers provision of the Texas Constitution." *Brooks*, 141 S.W.3d at 164.

As discussed above, the issue before this Court is an administrative license suspension, and the ALJ was required to find that Officer Mitchell had probable cause to arrest Henneke for DWI before she could authorize DPS to suspend Henneke's license. *See* Tex. Transp. Code §§ 724.042(2)(A), 724.043. Whether Henneke did in fact drive while intoxicated was not an

issue before the ALJ and could have no affect on the validity of the ALJ's decision. That is why, as discussed above, the evidence of Henneke's later blood test was not dispositive of the question of whether there was probable cause for arrest. Therefore, any declarations concerning the definition of intoxication or concerning Henneke's intoxication or the lack thereof are irrelevant to the ALJ's decision and would not resolve the controversy between DPS and Henneke. Because the declarations Henneke has requested concerning the Penal Code's definition of intoxication and his own intoxication do not resolve any actual controversy, we conclude that this Court, like the trial court, lacks jurisdiction over these UDJA claims. Accordingly, we overrule Henneke's third and fourth issues.

## CONCLUSION

We affirm the trial court's final judgment affirming the ALJ's order authorizing DPS to suspend Henneke's driving privileges and declining to make the declarations Henneke requested.[6]

---

[6] While the record and issues before us compel our decision today, we do share Henneke's concerns about the license-suspension provisions of chapter 724 of the Texas Transportation Code. One can imagine a scenario in which an officer had probable cause to arrest a person for DWI (perhaps because the person was ill and therefore exhibiting what appeared to be signs of intoxication), the person refused to give a breath or blood specimen (perhaps because of sincere philosophical or religious objections), later testing revealed that the person had a BAC of 0.00, and other evidence established that the person had not touched a drop of alcohol or other intoxicating substance. Under the statute, if the person is then prosecuted and acquitted, DPS would not be allowed to suspend the person's driving privileges. *See* Tex. Transp. Code § 724.048(c). But if the person is never prosecuted, the person's driving privileges will be suspended despite her actual innocence. *See id.* § 724.048(b) ("Except as provided by Subsection (c), the disposition of a criminal charge does not affect a license suspension or denial under this chapter and is not an estoppel as to any matter in issue in a suspension or denial proceeding under this chapter."). In other words, an innocent person has no procedural mechanism to avoid the suspension by demonstrating her innocence, because she cannot compel the State to charge and prosecute her so that she can obtain the acquittal required by section 724.048(c). Compare this scenario to the expunction process, in which a person

17

$\overline{\phantom{xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx}}$

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   July 26, 2018

$\overline{\phantom{xxxxxxxxxxxxxxxxx}}$

who is released without charge or whose charges are dismissed may be entitled to relief. *See* Tex. Code Crim. Proc. art. 55.01(a)(2) (providing that "[a] person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if . . . the person has been released and the charge, if any, has not resulted in a final conviction and is no longer pending and there was no court-ordered community supervision under Chapter 42A for the offense" and other conditions are met).

Compare also the license-suspension provisions of chapter 524 of the Transportation Code, which are distinct from those of chapter 724 at issue in this appeal.  Under chapter 524, "The department may not suspend a person's driver's license if . . . the person is an adult and the analysis of the person's breath or blood specimen determined that the person had an alcohol concentration of a level below that specified by Section 49.01(2)(B), Penal Code, at the time the specimen was taken . . . ." Tex. Transp. Code § 524.012(c)(1).  The Texas Court of Criminal Appeals has explained, when discussing the license-suspension provisions of chapter 524, "The license-suspension statute serves the remedial purpose of protecting public safety by quickly removing drunk drivers from the road." *Mireles v. Texas Dep't of Pub. Safety*, 9 S.W.3d 128, 130 (Tex. 1999).  However, we fail to see how chapter 724 of the Transportation Code serves that purpose by refusing to return driving privileges to those who demonstrate their actual innocence but are not able to obtain an acquittal through no fault of their own.  Nevertheless, these questions are not before us in this case.

18